# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 21, 2010

## STATE OF TENNESSEE v. BRITTANY SCOTT PYE

**Appeal from the Circuit Court for Maury County**
No. 17640    Stella L. Hargrove, Judge

---

**No. M2009-00825-CCA-R3-CD - Filed May 11, 2010**

---

The Defendant, Brittany Scott Pye, was convicted by a Maury County jury of sale of .5 grams or more of cocaine, a Class B felony. See Tenn. Code Ann. § 39-17-417. Following a sentencing hearing, the trial court imposed a fifteen-year sentence for this conviction, which was ordered to be served consecutively to two prior sentences. In this direct appeal, the Defendant challenges only the imposition of consecutive sentences. After a review of the record, we affirm the judgment of the trial court. However, we must remand for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Remanded**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Larry Samuel Patterson, Jr., Columbia, Tennessee, for the appellant, Brittany Scott Pye.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

This case stems from the October 20, 2006 sale of a bag of crack cocaine to a confidential informant. The confidential informant telephoned the Defendant to meet her at a car wash. After the Defendant's arrival, the confidential informant got into a car with the

Defendant and Brandon Russell. The informant put her money on the console of the car and "picked up the dope." The informant returned to the officer with a quantity of crack cocaine weighing .8 grams. The sale was observed by an undercover police officer and was recorded by video camera. Following a jury trial, the Defendant was convicted of sale of .5 grams or more of cocaine, a Class B felony. See Tenn. Code Ann. § 39-17-417(a), (c)(1).

**Sentencing Hearing**

A sentencing hearing was held on March 19, 2009. At this hearing, Emily Thigpin, an employee of the Tennessee Board of Probation and Parole, testified that she prepared the presentence report in the Defendant's case. Ms. Thigpen explained that the Defendant provided a written statement for her report, wherein the Defendant professed he was innocent of the crime:

> I know I put myself in this situation but I'm innocent because there was another person in this case and was not charged. But I've sold drugs in the past and have taken them. So I know I do have a problem and I didn't do this crime like they say I have.

The Defendant also admitted that he needed drug treatment and stated that he "would like to see [his] children grow up . . . ." However, on the questionnaire the Defendant indicated that he had never used alcohol or drugs. The Defendant reported no physical or mental health problems.

Ms. Thigpen reported that the Defendant had failed three drug tests while on probation, testing positive for (1) marijuana, benzodiazepines and cocaine on April 12, 2005, (2) marijuana on May 2, 2005, and (3) marijuana and cocaine on December 12, 2005. According to Ms. Thigpen, the Defendant's probation was revoked based upon the instant conviction.

As for the Defendant's employment history, the Defendant reported working for A-Plus Cleaning, being supervised by Debra Pye, and for CPS, making wrapping paper. The Defendant did not provide dates of employment or any other information. Ms. Thigpen believed Debra Pye was the Defendant's aunt. Ms. Pye sent a letter to Ms. Thigpen stating that the Defendant worked for her approximately three days a week and earned $40 per day cleaning office buildings and homes. When asked about the Defendant's education, Ms. Thigpen stated that the Defendant attended Columbia Central High School through the tenth grade; he did not have a high school diploma and had not obtained a GED.

The Defendant's mother, Gloria Arelne Pye, confirmed that the Defendant worked for Debra Pye cleaning houses and office buildings about three days a week. She also testified

that the Defendant worked for CPS for about five months. Before his incarceration, the Defendant lived with his mother. His ten-year-old daughter also lived there; however, his three-year-old son resided with the child's mother. The Defendant's mother was not aware that the Defendant had a drug problem. When asked if she had noticed a difference in her son since his incarceration, she stated that "[h]e seems to be more mature now" and "his life is more focused."

On cross-examination, the Defendant's mother testified that the Defendant had also worked at Lasko for about three or four months. She also stated that the Defendant had supported his children financially when he was living with her and that he had sometimes given her money to "help out." According to the Defendant's mother, the Defendant did not "believe they should have found him guilty."

The twenty-seven-year-old Defendant also testified at his sentencing hearing. He acknowledged that he was on probation for ten years at the time he committed this offense. He admitted to selling cocaine, stating, "I didn't wanna work at the time. I know I've made the wrong choices." When asked if he had a drug problem, he confirmed that he had used drugs in the past. He reported that he was taking a GED class while in prison and was trying to get into a "therapeutic drug program[.]" The Defendant testified that, after his release, he wanted to care for his children and to obtain "a real job[.]" He wanted to "just be a better person[.]"

On cross-examination, the Defendant admitted he violated the terms of his probation by taking drugs. He claimed he started attending drug classes after his positive drug tests. When asked about his claim of innocence, the Defendant stated that he "was around the wrong person at the wrong time." He stated that he was not the person who handed the cocaine to the confidential informant, but admitted that he did take the money from her and that the drugs belonged to him.

The presentence report reflected that, in addition to the three felony convictions used to establish is Range II classification (facilitation of armed robbery, cocaine possession with intent to sell, and attempted sale of cocaine), the Defendant also had four misdemeanor convictions for driving while his license was suspended and failing to produce a license upon demand. The presentence report also showed that the Defendant had been given an opportunity to participate in a rehabilitation program. Following an assessment with the Multi-County Alcohol/Drug Safety Program in May 2005, it was recommended that the Defendant get further substance abuse treatment, and he attended treatment on an out-patient basis until October 2005. He was dismissed from the program for failing to comply with the attendance policy.

At the conclusion of the hearing, the trial court sentenced the Defendant to fifteen years as a Range II, multiple offender. The trial court further ordered this sentence to be served consecutively to Maury County cases number 12011 (three-years for facilitation of attempted robbery) and number 12796 (eight years for cocaine possession with intent to sell).[1] This appeal followed.[2]

**Analysis**

The Defendant argues that the trial court erred in ordering him to serve consecutive sentences. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses;

---

[1] From our review of the record, it appears that the trial court intended this fifteen-year sentence to be serve consecutively to the remaining ten years in case numbers 12796 and 16088, not 12011. We remand only for correction of the judgment form.

[2] These 2002 sentences were consecutive terms, resulting in an effective eleven-year sentence. In 2006, the Defendant was convicted in case number 16088 of attempted sale of cocaine, that two-year sentence to be served consecutively to the effective eleven-year sentence. It was agreed at the Defendant's May 27, 2008 revocation hearing that his sentence in case number 12011 had expired. His probation (ten years remaining) had already been revoked at the time of this sentencing hearing.

-4-

and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

In addition to these criteria, consecutive sentencing is also subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that the defendant's "potential for rehabilitation" be considered. Tenn. Code Ann. § 40-35-103(2), (4) and (5). Additionally, we are advised that "the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of a number of criteria by a preponderance of the evidence. In this case, the trial court ordered consecutive sentences based on its findings that (1) the Defendant "is a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood"; (2) the Defendant "is an offender whose record of criminal activity is extensive"; and (3) the Defendant "is sentenced for an offense committed while on probation." See Tenn. Code Ann. § 40-35-115(b)(1), (2), (6).

The record in this case supports the findings underlying the trial court's order that the Defendant's sentences be served consecutively. The twenty-seven-year-old Defendant had spent much of his adult life in the criminal court system and had no significant employment history. The trial court was "skeptical" of his employment with his aunt, concluding that he is "a cocaine dealer." His prior criminal history included convictions for facilitation of aggravated robbery, cocaine possession with intent to sell, attempted sale of cocaine, and four misdemeanors. The Defendant acknowledged that he was on probation at the time he committed the instant offense. The trial court also found that the Defendant did not accept full responsibility for his actions and that his potential for rehabilitation was poor. We note that, in addition to his prior probation violation by testing positive for drugs three times, the Defendant had previously been given an opportunity to participate in a rehabilitation program, and he was dismissed from that program for failing to comply with the attendance policy.

The Defendant makes no forceful argument that these criteria do not apply; he simply contends concurrent sentencing is "more appropriate" and "reasonably related to the severity of the offenses involved." The record supports the imposition of consecutive sentences under any of the three criteria found by the trial court. We conclude that the trial court did not abuse its discretion by ordering consecutive sentences. The Defendant is not entitled to relief on this issue.

**Conclusion**

We conclude that the trial court did not err in its sentencing determination. The judgment of the Maury County Circuit Court is affirmed. This case is remanded solely for the purpose of a corrected judgment form in accordance with this opinion.


_____
DAVID H. WELLES, JUDGE